IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

PHOENIX RENOVATION CORP.,    )
d/b/a Phoenix Construction,  )
Inc. and Plumbing Express    )
                             )
         Plaintiff,          )
                             )            1:05cv1196(JCC)
         v.                  )
                             )
PETER RODRIGUEZ, *et al.*    )
                             )
         Defendants.         )

**M E M O R A N D U M   O P I N I O N**

     This matter comes before the Court on Defendants'

Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure.  For the following reasons, the

Court will grant Defendants' Motion in part and deny it in part.

**I.  Background**

     Plaintiff, Phoenix Renovation Corporation ("Phoenix"),

is a plumbing company that specializes in the niche market of

polybutylene pipe replacement ("PB replacement").  The individual

defendants, Radek Koci and Peter Rodriguez, are former

subcontractors of Phoenix who performed PB replacement services.

According to the allegations of Phoenix's complaint, Koci and

Rodriguez terminated their subcontractor relationships with

Phoenix at approximately the same time and formed a limited

liability company, named Atlantic Re-Plumbing, LLC ("Atlantic"),

which is also a defendant in this action.  Prior to doing so,

Koci and Rodriguez solicited several employees and subcontractors

of Phoenix to terminate their relationships with Phoenix and join their to-be-formed venture.  In some instances, their solicitations were successful.

After forming Atlantic, Koci and Rodriguez competed with Phoenix in the PB replacement market and used substantial portions of Phoenix's business methods and other proprietary information.  Among other things, Atlantic began to utilize Phoenix's 2002 Interior Repipe Agreement as its consumer contract.  Phoenix's Interior Repipe Agreement was a document containing original content, and on August 4, 2005, Phoenix applied to register the document with the United States Copyright Office.  This action followed.  Phoenix has claimed that Defendants' use of the Interior Repipe Agreement constituted a copyright infringement and that the other alleged acts of Koci and Rodriguez amounted to breaches of their subcontractor agreements with Phoenix, tortious interference with Phoenix's contracts and business expectancies, and civil conspiracy. Phoenix has also asserted an unfair competition claim against Atlantic.  On November 14, 2005, Defendants filed this Motion, which is currently before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1). Where subject matter jurisdiction is challenged, the factual allegations are assumed true.  *See Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).  If, however, "the motion challenges the actual existence of the Court's subject matter jurisdiction, . . . the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"  *Id*. (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Ocean Breeze Festival Park, Inc. v.*

*Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994)).  The burden of proving subject matter jurisdiction is on the plaintiff.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)(citations omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*

### III.  Analysis

A.  Copyright Infringement

        Defendants argue that Phoenix's complaint is insufficient to state a claim for copyright infringement.  As Defendants point out, no action for copyright infringement may be brought until the copyright is preregistered or registered with the United States Copyright Office.  *See* 17 U.S.C. § 411(a).  *See also Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 283 (4th Cir. 2003) ("Copyright registration is a jurisdictional prerequisite to bringing an action for infringement under the Copyright Act.").  Phoenix's complaint alleged only that it had applied to register the 2002 Interior Repipe Agreement.  The question is therefore whether a work is considered "registered" for purposes

of bringing an infringement action when the owner of the work has only applied for registration.[1]

Defendants cite several decisions from other jurisdictions holding that a mere application for copyright registration is insufficient to constitute the registration prerequisite for an infringement action.  *See, e.g. Mays and Assocs., Inc. v. Euler*, 370 F. Supp. 2d 362, 368-370 (D. Md. 2005) (holding that receipt of a certificate of copyright registration or denial of the same is a jurisdictional prerequisite to filing suit); *Westport Historical Soc'y v. Lee*, 43 U.S.P.Q.2d 1858, 1860 (D. Kan. 1997) (dismissing a complaint and proposed amendment to the complaint alleging that the claimant filed a copyright registration application).  As Defendants recognize, this Court has already rejected the *Mays* interpretation.  *See Datatel, Inc. v. Rose & Tuck, LLC*, No. 05-495, 2005 WL 1668020, at \*9 (E.D. Va. June 17, 2005).

It is the Court's opinion that the *Mays* interpretation is at odds with the applicable statutory scheme.  The statute governing registration and issuance of registration certificates states that "[t]he effective date of a copyright registration is the day on which an application, deposit, and fee, which are

---

[1]Since the filing of this action, the Copyright Office has issued Phoenix a certificate of registration for the Interior Repipe Agreement.  In response to Defendants' Motion, Phoenix has offered to amend its complaint to reflect this fact.  Given the Court's resolution of this issue, set forth below, an amendment to Phoenix's complaint will be unnecessary.

later determined . . . to be acceptable for registration, have

all been received in the Copyright Office."  17 U.S.C. § 410(d).

While it is unclear whether § 410(d) dictates that registration

is complete upon application or merely provides for backdating of

registration certificates, § 408(a) provides further evidence of

congressional intent.  This provision states that "the owner of

copyright or of any exclusive right in the work *may obtain*

*registration of the copyright claim by delivering* to the

Copyright Office the deposit specified by this section, together

with the application and fee specified by sections 409 and 708."

17 U.S.C. § 408(a) (emphasis added).

> This Court has previously interpreted Section 408(a) to

mean that a registration occurs at the time a work's owner

deposits a proper application with the Copyright Office:

> Copyright laws make a distinction between copyright
> registration and receiving from the Copyright Office a
> certificate of registration.  Under the copyright laws,
> copyright registration is presumed to have occurred
> from the moment the owner of the copyrightable material
> delivers his application and filing fee to the
> Copyright Office.  17 U.S.C. § 408(a).  For this
> reason, it has been sensibly held by the Fifth Circuit
> that, "[i]n order to bring suit for copyright
> infringement, it is not necessary to prove possession
> of a registration certificate.  One need only prove
> payment of the required fee, deposit of the work in
> question, and receipt by the Copyright Office of a
> registration application." *Apple Barrel Prods., Inc.
> v. Beard*, 730 F.2d 384, 386-87 (5th Cir. 1984) (citing
> 2 Nimmer on Copyright § 7.16[B][1]); *see also Eltra
> Corp. v. Ringer*, 579 F.2d 294, 296 n.4 (4th Cir. 1978)
> (securing registration is no longer prerequisite to an
> infringement suit).  Were the law otherwise, the owner
> of a copyright would be left in legal limbo while the

Copyright Office considers whether he qualifies for a
certificate of registration.

*Secure Serv. Tech., Inc. v. Time & Space Processing, Inc.*, 722 F.
Supp. 1354, 1364 (E.D. Va. 1989).  Expanding on this Court's
"legal limbo" concern, the Middle District of North Carolina
explained that "[t]he process of processing and evaluating a
copyright application could be a lengthy one, during which time
an infringing use may continue unchallenged if the owner is not
allowed to begin suit."  *Iconbazaar, L.L.C. v. America Online,
Inc.*, 308 F. Supp. 2d 630, 634 (M.D.N.C. 2004) (footnote
omitted).  Defendants argue that this policy concern is
outweighed by the judicial interest in deferring to the Copyright
Office's expertise in reviewing an application before hearing an
infringement action.  *See Mays*, 370 F. Supp. 2d at 369.  As the
*Iconbazaar* Court noted, however, judicial abstention would fail
to serve this purpose, as the owner may bring an infringement
suit even after the Copyright Office denies his or her
application.  *See* 17 U.S.C. § 411(a); *Iconbazaar*, 308 F. Supp. 2d
at 634.

Thus, under this Court's view, a complaint alleging
that the copyright holder properly applied for registration with
the Copyright Office is sufficient to satisfy the precondition to
an infringement action.  In light of Rule 8's liberal pleading
standards, Phoenix's complaint alleging that it applied to
register the 2002 Interior Repipe Agreement is sufficient to meet

this requirement.  Accordingly, the Court will deny Defendants'

Motion to dismiss the copyright infringement claim.

B.  Supplemental Jurisdiction Over the State Law Claims

        Defendants also seek dismissal of Phoenix's eight state

law claims.  Specifically, Defendants contend that the exercise

of pendent jurisdiction over the state law claims is

inappropriate.  This Court has supplemental jurisdiction "over

all other claims that are so related to claims in the action

within [the Court's] original jurisdiction that they form part of

the same case or controversy under Article III of the United

States Constitution."  28 U.S.C. § 1367(a).  The Supreme Court

has held that "[t]he state and federal claims must derive from a

common nucleus of operative fact."  *United Mine Workers v. Gibbs*,

383 U.S. 715, 725 (1966).

        This Court clearly has original jurisdiction over

Phoenix's copyright infringement claim as a claim arising under

the federal copyright laws.  *See* 28 U.S.C. § 1331.  Defendants

argue that Phoenix's state law claims derive from separate facts

than the federal claim and that for this reason, the Court lacks

pendent jurisdiction.  The Court disagrees.  Based on the

allegations and arguments before the Court thus far, it appears

that the alleged copyright infringement is intertwined with the

state law claims.  Underlying each of Phoenix's state law claims

is a basic allegation that Defendants employed a business

-8-

strategy of stealing Phoenix's plans, methods, and employees. To prove the copyright infringement claim, Phoenix must necessarily put on evidence that Defendants used Phoenix's Interior Repipe Agreement, and so this claim will also require proof of such conduct. The Court will thus conclude that the state law claims and the infringement claim derive from a common nucleus of fact.

The Court may nevertheless decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> . . .
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Defendants argue that each of these three circumstances exist. First, they contend that Phoenix's copyright infringement claim is insubstantial at best and that as such, the state law claims predominate over it. Defendants characterize Phoenix's Interior Repipe Agreement as an unremarkable, boilerplate agreement that is unworthy of copyright protection. In response, Phoenix has presented a copy of its copyright registration certificate for the Interior Repipe Agreement. The certificate of registration constitutes prima facie evidence of the validity of the copyright, *see* 17 U.S.C. § 410, and demonstrates, for purposes of this Motion, the substantiality of Phoenix's infringement claim.

Defendants also argue that proceedings have already occurred in the state courts which would complicate any determination by this Court of Phoenix's state law claims.  In August of 2003, Phoenix filed a bill of complaint in the Circuit Court of the City of Alexandria alleging, *inter alia*, breach of contract, tortious interference, and civil conspiracy claims under Virginia law.  At the outset of the state litigation, Phoenix sought a temporary injunction, which the Circuit Court denied.[2]  Defendants claim that this denial will complicate this Court's adjudication of the state law claims by creating *res judicata* issues.  Of course, Virginia law will only afford a judgment preclusive effect in subsequent litigation if it amounts to a final judgment on the merits of a claim.  *See, e.g. State Water Control Bd. v. Smithfield Foods, Inc.*, 542 S.E.2d 766, 769 (Va. 2001).  The denial of a temporary injunction is not a final judgment on the merits and indeed is not to be given preclusive effect under Virginia law.  *See News-Register Co., Inc. v. Rockingham Pub. Co., Inc.*, 86 S.E. 874, 875 (Va. 1915).

Next, Defendants argue that the state law claims will require different proof than the infringement claim and that judicial economy thus requires separate proceedings in federal and state court.  Convenience and fairness to parties and

---

[2] On August 10, 2005, the Circuit Court granted Phoenix's motion for a nonsuit.  Thereafter, Phoenix filed the instant action in this Court, alleging similar claims.

-10-

considerations of judicial economy are valid concerns in
determining whether supplemental jurisdiction is appropriate.
*See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).  In
this case, both factors favor the exercise of supplemental
jurisdiction.

As stated above, the infringement claim derives from
common facts as the state law claims.  Phoenix must necessarily
prove use of the Interior Repipe Agreement to prove a copyright
infringement, and the witnesses who testify regarding the use of
this document will also have knowledge of the alleged conduct
that forms the basis of the state law claims.  Moreover, if
successful on the infringement claim, Phoenix will be entitled to
Defendants' profits that are attributable to the infringement.
*See* 17 U.S.C. § 504(b).  This will require proof of Defendants'
gross revenue, deductible expenses, and profits attributable to
factors besides the copyrighted work.[3]  *Id.*  This evidence will
likely also be relevant to some of the state law claims.
Convenience and fairness to the parties and judicial economy are
factors that each militate in favor of allowing the infringement

---

[3]In their reply, Defendants point out that they sell services, not the
copyrighted form allegedly used.  In this regard, they argue that evidence of
their revenues and expenses would be irrelevant to the infringement claim and
thus not a basis for exercising pendent jurisdiction.  The Court disagrees.
The fact that Defendants do not actually sell the copyrighted form at issue or
use it as a point of sale would not prevent Phoenix from claiming Defendants'
profits garnered as a result of the alleged infringement.  Suffice it to say
for purposes of this Motion that any preparation or licensing expenses that
Defendants avoided by using Phoenix's copyrighted form would likely be
considered in calculating profits.  Defendants' revenue and other expenses
would thus be relevant.

claim and the state law claims to be heard in the same proceeding.

Finally, Defendants argue that Counts VII and IX of Phoenix's complaint implicate a novel issue of Virginia law. Counts VII and IX allege that Koci, Rodriguez, and Atlantic conspired among themselves and with others to injure Phoenix in its business.  According to Defendants, Phoenix's conspiracy claims implicate the Virginia intracorporate immunity doctrine, *see, e.g. Fox v. Deese*, 362 S.E.2d 699, 708 (1987), and the possibility of a "personal stake" exception to this doctrine, which the Virginia Supreme Court has not yet recognized.  A cursory examination of Phoenix's allegations reveals, however, that the conspiracy claims do not implicate the intracorporate immunity doctrine at all.

The intracorporate immunity doctrine holds that a conspiracy between a corporation and agents of that corporation acting within the scope of their employment is a legal impossibility.  *See Griffith v. Electrolux Corp.*, 454 F. Supp. 29, 32 (E.D. Va. 1978).  Phoenix's conspiracy count is primarily based on allegations that Koci and Rodriguez misappropriated Phoenix's business plan and methods and solicited Phoenix's employees.  The majority of this alleged activity occurred while Koci and Rodriguez were in subcontractor relationships with Phoenix and cannot implicate the intracorporate conspiracy

doctrine at all, as Koci and Rodriguez had not yet formed

Atlantic.  Phoenix also alleges that Koci and Rodriguez conspired

with Scott Davis, a Phoenix employee at the time, to violate

Davis's covenant not to compete with Phoenix.  Because this

alleged conspiracy occurred while Davis was an employee of

Phoenix, not Atlantic, it also does not implicate the

intracorporate immunity doctrine.  In sum, Defendants have

presented no persuasive reason for this Court to decline to

exercise supplemental jurisdiction.

C.  Unfair Competition

        Count VIII of Phoenix's complaint alleges that Atlantic

engaged in unfair competition by representing to the public that

Phoenix's experiences were Atlantic's experiences, improperly

interfering with Phoenix's employment relationships, competing

without proper licensure, and violating the contracts of Koci and

Rodriguez.  Virginia adheres to "a narrow, sharply defined common

law definition of unfair competition."  *Monoflo Int'l, Inc. v.*

*Sahm*, 726 F. Supp. 121 (E.D. Va. 1989).  According to the

Virginia Supreme Court, "[t]he essential element of unfair

trading is deception, by means of which goods of one dealer are

palmed off as those of another, whereby the buyer is deceived,

and the seller receives the profit which, but for such deception,

he would not have received."  *Benj. T. Crump Co. v. J. L.*

*Lindsay, Inc.*, 107 S.E. 679, 684 (Va. 1921).

In its opposition to Defendants' Motion, Phoenix has elaborated on its allegations, claiming that shortly after the formation of Atlantic, Defendants distributed marketing literature stating that Atlantic had performed three thousand PB replacement jobs.  According to Phoenix, Koci and Rodriguez performed these jobs while working for Phoenix.  Phoenix also alleges that Atlantic has falsely informed the public that it is properly licensed in several states.  The net effect of this conduct, according to Phoenix, is that Atlantic has obtained patronage by representing to customers that it is no different than Phoenix, taking without expense the good will that Phoenix earned over time.  Phoenix argues that due to the small nature of the PB replacement market, it is likely that Phoenix would have secured a substantial portion of Atlantic's business but for Atlantic's marketing practices.

There is no allegation that Atlantic is attempting to deceive the buying public by holding itself out as Phoenix. While Defendants may have gained experience while working as subcontractors for Phoenix, an advertisement touting these experiences does not amount to deceptively palming off Atlantic's service as that of Phoenix.  Assuming Phoenix's allegations to be true, Atlantic has engaged in deceptive marketing regarding its licensures, but again, these marketing practices contain nothing that could deceive consumers into believing that they were

-14-

dealing with Phoenix.  Phoenix has failed to allege the essential element of a Virginia cause of action for unfair competition.  As such, Count VIII will be dismissed.

### IV.  Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss insofar as it seeks dismissal of Count VIII and deny the remainder of Defendants' Motion.  An appropriate Order shall issue.


December 8, 2005                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE